IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



SEGIN SYSTEMS, INC.,
and
SEGIN SOFTWARE, LLC
d/b/a RYNOHLIVE,

      Plaintiffs,

      v.                              CIVIL ACTION NO. 2:13cv190

STEWART TITLE GUARANTY COMPANY,
PROPERTYINFO CORPORATION,
and
FIRST BANKING SERVICES, INC.,

      Defendants.

## *MEMORANDUM OPINION & ORDER*

Before the Court is Defendants' Joint Motion to Stay. ECF No. 43. Plaintiffs developed, own, and employ a patented real estate settlement fraud prevention software system. Eight months after Plaintiffs filed this suit against Defendants for patent infringement and breach of contract, Defendants filed a petition for a review of the patent at issue with the Patent Trial and Appeal Board of the United States Patent and Trademark Office. Shortly thereafter, Defendants filed the instant motion asking the Court to stay this action pending that review pursuant to section 18(b) of the America Invents Act. For the reasons stated below, Defendants' Joint Motion is **DENIED WITHOUT PREJUDICE** to renew it.

## I. FACTUAL AND PROCEDURAL HISTORY

On April 24, 2012, the U.S. Patent and Trademark Office ("PTO") issued a patent to

1

Plaintiff Segin Software entitled "Method of Settling a Real Estate Transaction and System Implementing the Method."  Compl. ¶ 50.  Plaintiff Segin Systems had designed the patented software system as a method of combating and detecting fraud in the real estate settlement field. Compl. ¶¶ 10-11.  It launched the system, called Rynoh*Live*, in early 2009.  Compl. ¶ 12. Plaintiff Segin Software, LLC is a subsidiary of Plaintiff Segin Systems and now owns the rights to the patent.  Compl. ¶ 17.

When this software system was in its early development stages in 2004, one of the founders of Segin Systems communicated with Defendant Stewart Title Guaranty Company ("Stewart Title") about the project.  Compl. ¶ 22.  Shortly thereafter, the parties entered into Nondisclosure Agreements to restrict the disclosure of information about the project.  Compl. ¶¶ 23-24.  The parties continued to meet and discuss the prospect of Defendant Stewart Title purchasing the rights to use Rynoh*Live*.  Compl. ¶¶ 30-31.  Stewart Title made an offer in 2008, which Segin Systems rejected.  Compl. ¶¶ 32-33.  In late 2009, Stewart Title launched its own real estate settlement technology system developed by Defendant First Banking Services ("FBS").  Compl. ¶ 37. Plaintiffs now contend that system is an infringing "clone" of Rynoh*Live* that directly competes with it, and that Stewart Title passed on the information it learned about Plaintiffs' patented system to FBS so that FBS could develop the competing system.  Compl. ¶¶ 36-38.

On April 12, 2013, Segin Systems and Segin Software filed a complaint against Stewart Title, PropertyInfo Corporation, and FBS for patent infringement and breach of contract. Defendants were served with the complaint on or about July 25, 2013.  Joint Mot. to Stay 3. Plaintiffs allege that all three Defendants have infringed and continue to infringe the patent.  They also raise a breach of contract claim against Stewart Title and its affiliate PropertyInfo Corporation, and allege that those two Defendants breached and continue to breach the

2

Nondisclosure Agreements.   On September 23, 2013, Defendants filed their Answers to the Complaint generally denying the allegations.   Defendants Stewart Title and PropertyInfo also raised counterclaims seeking a declaration that the patent is invalid.   Defendant FBS filed an Amended Answer on October 15, 2013 that raised a similar counterclaim, and on November 18, 2013, Plaintiffs filed their answer to the counterclaims.

On December 26, 2013, Defendants filed the instant Motion to Stay.   They noted that on December 20, 2013, they had filed a petition with the Patent Trial and Appeal Board ("PTAB") of the PTO challenging the validity of all claims of the patent pursuant to 35 U.S.C. §§ 101 & 112. Joint Mot. to Stay 4.   A Rule 16(b) scheduling conference was held on January 13, 2014.   The Scheduling Order set the *Markman* hearing for July 28, 2014, the completion of discovery (except as to expert witnesses) for September 16, 2014, and the trial for October 28, 2014.   ECF No. 51. The day after the scheduling conference, Plaintiffs filed their Opposition to the Motion to Stay, ECF No. 50, and Defendants filed their replies on January 17, 2014, ECF No. 52.   This matter is accordingly ripe for disposition.


## II. LEGAL STANDARD

As the movants seeking a stay, Defendants bear the burden of demonstrating that a stay is warranted.   *E.g.*, *Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*, 922 F. Supp. 2d 486, 489-90 (D. Del. 2013).   The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), provides for PTO review of covered business method ("CBM") patents.   Section 18 of the AIA, effective as of September 16, 2012, provides the relevant standard for a stay pending that review.   When a party has filed for review of the validity of a covered business method ("CBM") patent and then seeks a stay of a civil action alleging infringement of that patent,

3

the court shall decide whether to enter a stay based on—

> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
> (B) whether discovery is complete and whether a trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA § 18(b)(1).   Parties may file an immediate interlocutory appeal of the court's decision to grant or deny the stay motion in the United States Court of Appeals for the Federal Circuit.   *Id.*

As multiple district courts have noted, the first three prongs of this statutory test replicate the same three factors many courts previously applied to determine whether to stay a civil action pending a review or reexamination by the PTO.   *E.g.*, *VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2:13-CV-11, 2014 WL 94371 at *2 (E.D. Tex. Jan. 9, 2014); *Market-Alerts Pty. Ltd.*, 922 F. Supp. 2d at 489.   Accordingly, the Court will consider both AIA and non-AIA cases, as relevant, in specifically assessing the first three factors of this test.   However, more generalized statements about the propriety of stays in non-AIA cases are of limited or no relevance in the analysis required in this case, because Congress also added a new fourth factor to the traditional test: whether a stay would reduce the burden of litigation.   Courts generally have agreed that this factor is designed to place a thumb on the scales in favor of a stay.   *E.g.*, *Versata Software, Inc. v. Volusion, Inc.*, No. A-12-CA-893, 2013 WL 6912688 at *2 (W.D. Tex. June 20, 2013); *Market-Alerts Pty. Ltd.*, 922 F. Supp. 2d at 489-90.   The Court agrees with this conclusion, because a stay will in many cases actually reduce the burden of litigation; therefore, the new fourth factor will usually weigh to some degree in favor of a stay.

Nonetheless, although it easily could have done so, Congress did not provide for an automatic stay in the statutory text.   And the statute does not, for example, use language that

directs courts to grant a stay unless a specific condition or conditions were satisfied.   The Court

therefore declines to rely on statements in the legislative history emphasized by Defendants that

state that a stay should almost always be granted, as such sentiments are not reflected in the

statutory text.   *See, e.g.*, Joint Mot. to Stay 5 ("It is congressional intent that a stay should only be

denied in extremely rare circumstances." (quoting 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011)

(statement of Sen. Schumer)).   *In re Crescent City Estates, LLC*, 588 F.3d 822, 827 (4th Cir.

2009) (legislative history cannot override statutory text).   Instead, the Court will apply each of the

four factors individually in light of the individual circumstances of the case at hand.   *See*

*VirtualAgility, Inc.*, 2014 WL 94371 at *2.   Moreover, the Court observes that not all of the

legislative history weighs in Defendants' favor, because it also describes the review program as

"designed to provide a cheaper, *faster* alternative to district court litigation over the validity of

business-method patents."   *See* 157 Cong. Rec. S1360-02 (2011) (emphasis added).   In this case,

the scheduled trial would likely take place months before the PTAB concludes its review.   Pltfs'

Br. in Opp. to Joint Mot. to Stay, ECF No. 50 (hereinafter "Opp."), at 12.

### III. ANALYSIS

#### A.  Issue Simplification

The first factor is "whether a stay, or the denial thereof, will simplify the issues in question

and streamline the trial."   AIA § 18(b)(1)(A).   Defendants note that their CBM review petition

challenges the validity of every claim in the patent.   Joint Mot. to Stay 6.   Further, the validity of

those claims is an issue that all Defendants have raised as defenses and counterclaims.   If the

PTAB agrees to review Defendants' petition, a decision it will reach no later than June 20, 2014

(less than three months from now), *id.* at 4, a stay pending that review would reduce the number of

5

disputed issues whether or not the review ultimately concludes that the patent is valid.   This is because the validity of claims that the PTAB deems invalid would not be re-litigated in the context of Plaintiffs' patent infringement claim.   And any claims that it finds valid would also be resolved for the purposes of this action, because Defendants would be precluded from challenging the validity of such claims after PTAB review.   AIA § 18(a)(1)(D).   Therefore, at least some of the issues of invalidity raised in Defendants' answers and counterclaims would be simplified by a stay if the PTAB agreed to review the patent.

Nonetheless, the critical question is not whether PTAB review would simplify the issues in question, but whether a stay of this action would do so.   At this stage, it is difficult to predict the impact of a stay because it is completely unknown whether or not that review will occur.   *See Benefit Funding Sys. LLC v. Advance Am., Cash Advance Ctrs., Inc.*, Civ. No. 12-801, 2013 WL 3296230 (D. Del. June 28, 2013) (denying without prejudice to renew a stay motion in the event the PTAB grants review where "[t]he PTAB has not yet determined whether to undertake CBM review . . . and may not do so for another three months").   The Court is unable to determine at this juncture how likely it is that PTAB will conclude that "it is more likely than not that at least one of the claims challenged in the petition is unpatentable," a finding that the PTAB must make before granting review therefore grant review.   37 C.F.R. § 42.208(c).   On the one hand, Defendants claim that CBM review is granted 80% of the time.   Reply Br. of Defts. Stewart Title and PropertyInfo, ECF No. 53, at 9.   But on the other hand, Plaintiffs note that unlike many CBM patents, the patent in this case was subject to an extensive review during patent prosecution, beginning in 2007 and ending in 2012.   Opp. 16.   According to Plaintiffs, during that review, the issues of invalidity that Defendants have raised in the PTAB were comprehensively addressed.   *Id.*

Not only is it unknown whether or not the PTAB will grant review, any resulting simplification of the issues would be only moderate.   First, in addition to the patent infringement claim, Plaintiffs have brought a breach of contract claim against two of the Defendants (Stewart Title and PropertyInfo).   Defendants observe that this is a state law claim subject to supplemental jurisdiction and would likely be dismissed if the patent infringement claim were dismissed.   *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction).   Reply Br. of FBS, ECF No. 52, at 7-8.   Nonetheless, Plaintiffs' patent infringement claim will remain viable as long as the PTAB does not invalidate every claim of the patent.   Therefore, so will the breach of contract claim. Second, Plaintiffs note that Defendants raise invalidity arguments in their Answers that they have not raised in their CBM petition.   Opp. 10.   Accordingly, unless the PTAB finds every claim of the patent invalid, some invalidity issues will remain.   When claims will or are likely to remain after PTO review, district courts have frequently found that a stay will do little to simplify the issues at stake.   *E.g.*, *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09cv620, 2010 WL 1279092 at *3 (E.D. Va. Mar. 31, 2010); *Tokuyama Corp. v. Vision Dynamics, LLC*, No. C 08-2781, 2008 WL 4452118 at *3-*4 (N.D. Cal. Oct. 3, 2008); *I-Flow Corp. v. Apex Med. Techs., Inc.*, No. 07-CV-1200, 2008 WL 2078623 at *2 (S.D. Cal. Apr. 15, 2008).

In sum, because of the substantial uncertainties existing at this stage, the first factor weighs only slightly in favor of staying the action.

## B.   Progress of the Litigation

The second factor is "whether discovery is complete and whether a trial date has been set." AIA § 18(b)(1)(B).   Courts have found that a stay in the early stages of a case tends to maximize the efficient use of judicial resources and prevent duplicative or wasted efforts issues that are

ultimately resolved by PTO review.  *E.g., Market-Alerts Pty. Ltd.*, 922 F. Supp. 2d at 494.  The

trial date in this case has been set, pursuant to the Rule 16(b) Scheduling Order, for October 28,

2014.  ECF No. 51.  However, discovery has only recently begun, and is scheduled to be

completed by September 16, 2014 (with the exception of discovery pertaining to expert witnesses).

*Id.*  As of mid-January, Plaintiffs had served document requests and interrogatories.  Opp. 11.

The Court also observes that the *Markman* hearing is set for July 28, 2014.  In fact, the only

Scheduling Order deadlines that will occur prior to the PTAB's deadline for indicating whether it

will grant review relate to the *Markman* hearing.  Briefing on claim construction is due on June

20, 2014, the same day as the deadline for the PTAB's decision.  ECF No. 51.

 Although Plaintiffs filed their Complaint nearly a year ago, this case is, as described above,

still in its moderately early stages.  Nonetheless, if the Court granted a stay now, the established

trial date would undoubtedly be significantly delayed, even if the PTAB ultimately declined to

review the case and the Court lifted the stay at that point.  Further, the Court concludes that

declining to grant a stay at this juncture will not create undue inefficiency or waste of resources.

By the time the PTAB decides whether it will take up review of the patent, discovery will still be at

least three months from completion.  And although preparations for the *Markman* hearing will

have been substantially completed by then, the Court notes that the parties' preparation and

briefing for that hearing will overlap to some extent with the efforts they must undertake before the

PTAB.  Therefore, the *Markman* preparations will not be entirely duplicative if the Court were to

grant a motion to stay at a later date.  *See Versata Software*, 2013 WL 6912688, at *3 (noting that

"the PTAB conducts its own claim construction as part of the CBM Review program, and thus this

Court's efforts in construing the claims may go to waste or be duplicative of the PTAB's own

findings").

Balancing the early stages of discovery with the Rule 16(b) schedule and the fact that this case has been pending for nearly a year, the Court finds that the second factor is neutral.

## C. Prejudice to Plaintiffs and Tactical Advantage to Defendants

The third factor is "whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party." AIA § 18(b)(1)(C). The parties vigorously dispute whether or not Plaintiffs and Defendants are direct competitors, a circumstance that courts frequently find creates undue prejudice. *E.g.*, *VirtualAgility, Inc.*, 2014 WL 94371, at *5. Plaintiffs claim that they "and Defendants offer the only two real estate settlement products on the market of this nature, and compete head-to-head for the business of the same customer base of underwriters and title agencies." Opp. 13. Defendants did not address whether or not they were direct competitors with Plaintiffs in their Motion to Stay, but they do in their Reply Briefs. In its Reply, FBS (who allegedly developed the potentially competing software) states that there is no evidence that it is Plaintiffs' direct competitor. Reply Br. of FBS 9. In their Reply, Defendants Stewart Title and PropertyInfo argue that the Complaint indicates that their allegedly competing product was used only by them through 2012 and therefore could not have competed with Plaintiffs during that timeframe. Further, they state that even if there is competition, it is not based on Plaintiffs' patented product. Reply Br. of Defts. Stewart Title and PropertyInfo 7-8.

The Court initially observes that the "ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006). Although the Court will still consider Defendants' arguments because they can be considered responses to the argument in Plaintiffs' Opposition as to direct competition, the Court proceeds with caution

9

because it has not had the benefit of Plaintiffs' response to these specific points.

Defendants' first argument is that they do not directly compete with Plaintiffs.   Parties are direct competitors if they sell similar products to similar customers or in similar markets.   *E.g.*, *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 636 F. Supp. 2d 891, 900 (E.D. Mo. 2009). In this instance, there is little dispute that Defendants' product, AgencySecure, is sufficiently similar to Plaintiffs' product, Rynoh*Live*.   The Complaint alleges that AgencySecure is "a real estate settlement technology, the primary component of which is a Rynoh*Live* clone that FBS allegedly 'developed' for Stewart."   Compl. ¶ 37.   *See also* Compl. ¶ 43 ("The settlement software utilized in AgencySecure was and is identical to Rynoh*Live* in all material respects."). Defendants do not dispute this characterization of the similar nature of the products in their stay filings.   They do dispute, however, whether they offer AgencySecure for sale to similar marketplaces.   According to the Complaint, FBS developed AgencySecure and then agreed to a three-year exclusivity contract with Stewart Title, which lasted from 2009 to 2012.   *Id.* ¶¶ 38-39. After that expired, however, the Complaint states only that "FBS *intends* to expand AgencySecure beyond Stewart and launch it across the market."   *Id.* ¶ 40 (emphasis added).   It also claims that at an AgencySecure product demonstration (apparently in 2012), FBS claimed that AgencySecure works "just like" Rynoh*Live*.   *Id.* ¶ 45.

These facts alone are insufficient to show that Defendants and Plaintiffs are currently direct competitors.   But Plaintiffs' Opposition includes more information.   It states that Stewart Title and/or FBS are currently marketing and licensing AgencySecure "to Rynoh*Live*'s main customers (various title agencies) at a lower price than that charged for Rynoh*Live*."   Opp. 4.   As support for this allegation, Plaintiffs attached an advertisement for AgencySecure, offered by Stewart and copyrighted as of 2013 to Stewart.   Opp., Ex. E.   Defendants ignore this Exhibit in their replies,

10

and therefore have provided the Court with little reason to question it.   Accordingly, the Court

concludes that Plaintiffs have sufficiently shown, for the purposes of this motion, that they and

Defendants are direct competitors.

Stewart Title and PropertyInfo further contend that even if there is competition, it is not

based on a product that is covered by Plaintiffs' patent, and therefore granting a stay would not

cause Plaintiffs undue prejudice.   The rationale for finding undue prejudice where parties are

direct competitors is that the delay resulting from a stay "will have outsized consequences to the

party asserting infringement has occurred, including the potential for loss of market share and an

erosion of goodwill." *SensoRx, Inc. v. Hologic, Inc.*, Civ. No. 12-173, 2013 WL 144255 at \*5 (D.

Del. Jan. 11, 2013).   Where the competition between the parties is unrelated to the subject of the

patent infringement suit, then this rationale would potentially have less force, as a delay in the

unrelated patent infringement suit would likely not cause prejudice.   Specifically, Defendants

Stewart Title and PropertyInfo note that the patent describes five modules within Rynoh*Live*.

The fifth one is called the "Disbursement Module," or Rynoh +.   *See* Opp., Ex. D, at 1.

Defendants observe that the current version of Rynoh*Live*, as described in the Complaint and on

Rynoh's website, Opp., Ex. A, appears to omit that module and instead use a module entitled

"RynohSecure."   RynohSecure enables the customer to continuously monitor and audit account

activity, Compl. ¶ 14, whereas Rynoh+ is a "complete funds receipt and disbursement subsystem."

Opp., Ex. D.

Especially without the benefit of Plaintiffs' argument on this point, the Court declines to

resolve at this early juncture whether Rynoh*Live* (or its current iteration) is "covered" by the

disputed patent, a substantive issue that could have significant implications for the merits of this

suit.   The Court simply observes that because the first four modules as described in the patent and

11

the Complaint appear to be identical and because the overall functioning of the product as described in the patent and the Complaint appear similar, the Court is able to conclude that a delay in the resolution of Plaintiffs' claims poses a substantial risk of undue prejudice to Plaintiffs.

The third factor also directs an inquiry into whether the moving party would gain a clear tactical advantage by a stay. Plaintiffs contend that Defendants would because 1) Defendants have not raised all of their invalidity defenses before the PTAB, 2) witnesses and evidence will become less reliable as time passes, 3) Plaintiffs would be deprived of their chosen forum, and 4) Defendants have shown no hardship or inequity. Opp. 15-19. Plaintiffs also described the extensive review process that they have already undergone, but the Court found that more appropriate to address in the context of the first factor, as discussed above.

Only Plaintiffs' first argument is successful. That Defendants may have two separate opportunities in two separate forums to challenge the validity of Plaintiffs' patent does raise a concern of an unfair tactical advantage, giving them two bites of the apple as to a central defense. As to Plaintiffs' second contention regarding witnesses and evidence, Plaintiffs provide no detail and specific examples, and do not explain how this factor would favor Defendants and not Plaintiffs. Accordingly, they have not shown how any additional delay would give Defendants a "clear" tactical advantage. The Court concludes that Plaintiffs' last argument is irrelevant because the AIA does not mention requiring Defendants to show hardship or inequity to justify a stay. Plaintiffs' third argument fails for the same reason, as the AIA explicitly contemplates that the nonmoving party will be deprived of their chosen forum, and that such deprivation will provide a benefit to judicial efficiency.

Because Plaintiffs are likely to suffer undue prejudice the later that their suit is resolved, and because Defendants will obtain a tactical advantage from a stay, the Court concludes that the

12

third factor weighs strongly in favor of denying a stay.

## D. Burden of Litigation

Finally, the AIA requires the Court to consider "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." AIA § 18(b)(1)(D). Much of the analysis conducted under the first factor is relevant here, as the streamlining of issues will generally serve to reduce the burden of litigation on the parties and on the Court. The Court will incorporate that analysis by reference here. Beyond that, however, an additional consideration is relevant in considering the burden of litigation on the Court because the Motion to Stay was filed before the PTAB indicated whether or not it would review Plaintiffs' patent. If the Court were to stay this action now and the PTAB were to decline review, the overall effect would be to increase the burden on the Court's resources, as it would likely have to hold another Rule 16(b) scheduling conference and rewrite the scheduling order to account for the delay in discovery, *Markman* hearing briefings. The trial date would also likely be substantially delayed. On the other hand, entering a stay now could reduce the burden of litigation if the PTAB did decide to review the patent. For these reasons, the Court concludes that the fourth factor weighs slightly in favor of a stay.

## IV. CONCLUSION

In sum, the first and fourth factors weigh slightly in favor of a stay, the second factor is neutral, and the third factor weighs strongly against a stay. Therefore, Defendants' Joint Motion to Stay is **DENIED**. Given the uncertainty surrounding whether or not the PTAB will review the disputed patent, Defendants' Motion to Stay is simply premature. *See Transunion Intelligence LLC v. Search Am., Inc.*, No. 11-CV-1075, 2014 WL 753781, at *3 (D. Minn. Feb. 26, 2014)

(noting that it was to the movant's credit that "it did not seek a stay until the PTAB *granted*

review").   The best course in light of the current circumstances is to proceed with this case as

scheduled.   The denial of a stay is, however, **WITHOUT PREJUDICE** to Defendants to renew

the Motion to Stay when and if the PTAB grants review.

      The Clerk is **DIRECTED** to send a copy of this Order to all parties.

      **IT IS SO ORDERED.**

Norfolk, Virginia
March ꝫꝒ , 2014

Raymond A. Jackson
**United States District Judge**

14