IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



SEGIN SYSTEMS, INC.,
and
SEGIN SOFTWARE, LLC
d/b/a RYNOHLIVE,

    Plaintiffs,

v.                                        CIVIL ACTION NO. 2:13cv190

STEWART TITLE GUARANTY COMPANY,
PROPERTYINFO CORPORATION,
and
FIRST BANKING SERVICES, INC.,

    Defendants.

### *MEMORANDUM OPINION & ORDER*

Before the Court is Defendants' Renewed Joint Motion to Stay. ECF No. 128. Plaintiffs developed, own, and employ a patented real estate settlement fraud prevention software system. Eight months after Plaintiffs filed this suit against Defendants for patent infringement and breach of contract, Defendants filed a petition for a review of the covered business method patent at issue with the Patent Trial and Appeal Board of the United States Patent and Trademark Office ("PTAB"). Shortly thereafter, Defendants filed their first stay motion asking the Court to stay this action pending that review pursuant to section 18(b) of the America Invents Act. Reasoning that it was unknown whether that review would occur, the Court denied Defendants' first stay motion without prejudice to renew it. The PTAB has since indicated that it will review all claims of the patent, and Defendants filed the instant motion requesting that this action be stayed pending that review. For the reasons stated below, Defendants' Renewed Joint Motion to Stay is

**GRANTED IN PART AND DEFERRED IN PART.**

## I. FACTUAL AND PROCEDURAL HISTORY

On April 24, 2012, the U.S. Patent and Trademark Office ("PTO") issued a patent to Plaintiff Segin Software entitled "Method of Settling a Real Estate Transaction and System Implementing the Method." Compl. ¶ 50. Plaintiff Segin Systems had designed the patented software system as a method of combating and detecting fraud in the real estate settlement field. Compl. ¶¶ 10-11. It launched the system, called Rynoh*Live*, in early 2009. Compl. ¶ 12. Plaintiff Segin Software, LLC is a subsidiary of Plaintiff Segin Systems and now owns the rights to the patent. Compl. ¶ 17.

When this software system was in its early development stages in 2004, one of the founders of Segin Systems communicated with Defendant Stewart Title Guaranty Company ("Stewart Title") about the project. Compl. ¶ 22. Shortly thereafter, the parties entered into Nondisclosure Agreements to restrict the disclosure of information about the project. Compl. ¶¶ 23-24. The parties continued to meet and discuss the prospect of Defendant Stewart Title purchasing the rights to use Rynoh*Live*. Compl. ¶¶ 30-31. Stewart Title made an offer in 2008, which Segin Systems rejected. Compl. ¶¶ 32-33. In late 2009, Stewart Title launched its own real estate settlement technology system developed by Defendant First Banking Services ("FBS"). Compl. ¶ 37. Plaintiffs now contend that system is an infringing "clone" of Rynoh*Live* that directly competes with it, and that Stewart Title passed on the information it learned about Plaintiffs' patented system to FBS so that FBS could develop the competing system. Compl. ¶¶ 36-38.

On April 12, 2013, Segin Systems and Segin Software filed a complaint against Stewart Title, PropertyInfo Corporation, and FBS for patent infringement and breach of contract. Defendants were served with the complaint on or about July 25, 2013. Joint Mot. to Stay 3.

2

Plaintiffs allege that all three Defendants have infringed and continue to infringe the patent. They also raise a breach of contract claim against Stewart Title and its affiliate PropertyInfo Corporation, and allege that those two Defendants breached and continue to breach the Nondisclosure Agreements. On September 23, 2013, Defendants filed their Answers to the Complaint generally denying the allegations. Defendants Stewart Title and PropertyInfo also raised counterclaims seeking a declaration that the patent is invalid. Defendant FBS filed an Amended Answer on October 15, 2013 that raised a similar counterclaim, and on November 18, 2013, Plaintiffs filed their answer to the counterclaims.

On December 26, 2013, Defendants filed their first Motion to Stay. After the matter was fully briefed, on March 31, 2014, the Court entered a Memorandum Opinion & Order denying the motion without prejudice to renew it should the PTAB agree to review the disputed patent. On July 10, 2014, Defendants filed a Notice indicating that on July 8, 2014, the PTAB instituted a covered business method review of all claims of the patent at issue, finding that "it is more likely than not that the challenged claims are unpatentable." ECF No. 127. They also filed the instant Renewed Joint Motion to Stay, ECF No. 128, and accompanying Memorandum. The Court set an abbreviated deadline for the Response in light of the upcoming *Markman* hearing, and also indicated that no Reply was necessary. Plaintiff filed a Response on July 18, 2013. The matter is accordingly fully briefed and ripe for disposition.

## II. LEGAL STANDARD

As the movants seeking a stay, Defendants bear the burden of demonstrating that a stay is warranted. *E.g., Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*, 922 F. Supp. 2d 486, 489-90 (D. Del. 2013). The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), provides for PTO review of covered business method ("CBM") patents. Section 18

of the AIA, effective as of September 16, 2012, provides the relevant standard for a stay pending that review. When a party has filed for review of the validity of a covered business method ("CBM") patent and then seeks a stay of a civil action alleging infringement of that patent,

> the court shall decide whether to enter a stay based on—
> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
> (B) whether discovery is complete and whether a trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA § 18(b)(1). Parties may file an immediate interlocutory appeal of the court's decision to grant or deny the stay motion in the United States Court of Appeals for the Federal Circuit. *Id.*

As multiple district courts have noted, the first three prongs of this statutory test replicate the same three factors many courts previously applied to determine whether to stay a civil action pending a review or reexamination by the PTO. *E.g.*, *VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2:13-CV-11, 2014 WL 94371 at *2 (E.D. Tex. Jan. 9, 2014); *Market-Alerts Pty. Ltd.*, 922 F. Supp. 2d at 489. Accordingly, the Court will consider both AIA and non-AIA cases, as relevant, in specifically assessing the first three factors of this test. However, more generalized statements about the propriety of stays in non-AIA cases are of limited or no relevance in the analysis required in this case, because Congress also added a new fourth factor to the traditional test: whether a stay would reduce the burden of litigation. Courts generally have agreed that this factor is designed to place a thumb on the scales in favor of a stay. *E.g.*, *Versata Software, Inc. v. Volusion, Inc.*, No. A-12-CA-893, 2013 WL 6912688 at *2 (W.D. Tex. June 20, 2013); *Market-Alerts Pty. Ltd.*, 922 F. Supp. 2d at 489-90. The Court agrees with this conclusion, because a stay will in many cases

actually reduce the burden of litigation; therefore, the new fourth factor will usually weigh to some degree in favor of a stay.

Nonetheless, although it easily could have done so, Congress did not provide for an automatic stay in the statutory text. And the statute does not, for example, use language that directs courts to grant a stay unless a specific condition or conditions were satisfied. The Court therefore declines to rely on statements in the legislative history emphasized by Defendants that state that a stay should almost always be granted, as such sentiments are not reflected in the statutory text. *See, e.g.*, Joint Mot. to Stay 5 ("It is congressional intent that a stay should only be denied in extremely rare circumstances." (quoting 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer)). *In re Crescent City Estates, LLC*, 588 F.3d 822, 827 (4th Cir. 2009) (legislative history cannot override statutory text). Instead, the Court will apply each of the four factors individually in light of the individual circumstances of the case at hand. *See VirtualAgility, Inc.*, 2014 WL 94371 at *2. Moreover, the Court observes that not all of the legislative history weighs in Defendants' favor, because it also describes the review program as "designed to provide a cheaper, *faster* alternative to district court litigation over the validity of business-method patents." *See* 157 Cong. Rec. S1360-02 (2011) (emphasis added). In this case, the trial is scheduled for October 28, 2014, whereas the PTAB's decision is not expected until the middle of 2015. ECF No. 132, at *13.

### III. ANALYSIS

The Court hereby incorporates by reference its prior discussion of the four factors in its March 31, 2014 Order declining a stay. The Court concluded then that the first and fourth factors weigh slightly in favor of a stay, the second factor is neutral, and the third factor weighs strongly against a stay. As to Plaintiffs' patent infringement claim and Defendants' associated

counterclaims, the Court concludes that a stay pending PTAB review is warranted. The third factor (undue prejudice and clear tactical advantage) still weighs strongly against a stay. Although discovery has progressed and the parties have completed their *Markman* briefings, the Court concludes that the second factor remains neutral given the remaining matters to be conducted and that the parties are still five months from the scheduled trial. The first and fourth factors, however, now weigh strongly in favor of a stay. Although PTAB review may not eliminate the need for a trial on Count 1 and Defendants' counterclaims, it will at the least surely simplify the issues which the Court must address. In the Court's experience, patent infringement actions consume a great deal of judicial resources, and any simplification will have a substantial impact. Accordingly, Defendants' Renewed Joint Motion to Stay is **GRANTED** as to Count 1 and associated counterclaims.

In their Response, Plaintiffs have argued in the alternative that the Court should at a minimum decline to stay the breach of contract claim (Count 2), which will not be affected by the outcome of PTAB review and which Plaintiffs brought pursuant to this Court's supplemental jurisdiction. Compl. ¶ 7 (citing 28 U.S.C. § 1367). In light of the precedent Plaintiffs cite and other precedent of which the Court is aware, the Court finds that further briefing on whether Count 2 should also be stayed is appropriate. *E.g., Gryphon Networks Corp. v. Contact Center Compliance Corp.*, 792 F. Supp. 2d 87 (D. Mass. 2011) (staying only the patent claim); *Card Technology Corp. v. Datacard Corp.*, 2007 WL 551615 (D. Minn. Feb. 21, 2007) (staying only the patent counterclaims and allowing counterclaim brought under supplemental jurisdiction to proceed). Therefore, Defendants' Renewed Joint Motion to Stay is **DEFERRED** as to Count 2. Defendants are **DIRECTED** to file a Reply Brief addressing this matter within **SEVEN (7) DAYS** of the date of this Order.

## IV. CONCLUSION

For the reasons stated above, Defendants' Renewed Joint Motion to Stay is **GRANTED IN PART**, as to Count 1 of the Complaint and associated counterclaims, and **DEFERRED IN PART**, as to Count 2 of the Complaint. Further, Defendants are **DIRECTED** to file a Reply Brief addressing whether Count 2 should also be stayed within **SEVEN (7) DAYS** of the date of this Order.

All matters in the Rule 16(b) scheduling order which pertain solely to Count 1 and associated counterclaims are hereby **STAYED**. All other matters necessary to resolve Count 2 shall proceed as scheduled until the Court resolves the entirety of Defendants' Renewed Joint Motion to Stay.

The Clerk is **DIRECTED** to send a copy of this Order to all parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
July 23, 2014

Raymond A. Jackson
United States District Judge